Case: 1:23-cv-16216  Filed: 22/01/24 Page 1 of 11



# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

Zhougui Hong,

        Plaintiff,

v.                                                  Case No. 23-cv-16216

The Individuals, Partnerships, and Unincorporated Associations Identified on Schedule A,

        Defendants.

## DEFENDANT'S, SYNTEGO LTD, MOTION TO DISSOLVE INJUNCTION AND MEMORANDUM IN SUPPORT THEREOF

Defendant on Schedule A, Syntego Ltd (hereinafter referred to as "Syntego" or "Defendant"),

hereby moves for an order dissolving the sealed temporary restraining order obtained by PLAINTIFF, Zhougui Hong, (hereinafter referred to as "Plaintiff"), on

November 24, 2023 and to prevent the preliminary injunction from being entered

against them, and, as grounds, states as follows:

.

Case: 1:23-cv-16216  Filed: 22/01/24 Page 2 of 11

# **INTRODUCTION.**

The Court entered a sealed temporary restraining order without notice against Syntego

on November 24, 2023. Syntego never received any notice of the injunction hearing, nor were they given any opportunity to be heard. Syntego currently has funds frozen of more than $18,000 dollars.

The following points of fact are the main reasons Syntego believe the Injunction should be Dissolved.

1) The plaintiff did not send a "cease and desist" letter, if Syntego had received such a document we would have complied immediately.

2) Syntego have been selling our branded Hook and Loop dots on Amazon.com since as early as 2015, a year before the plaintiff alleges to have started listing on amazon and two full years before the trademark "coins" was awarded.

3) Acquiescence the trademark "coins" was awarded over 5 years ago; it could be reasonably argued that the time passed without action constitutes acquiescence from the plaintiff.

4) The plaintiff has not substantiated or qualified their claims of "irreparable harm" indeed the US trademark office states explicitly that upon the award of a trademark the owner is required to be seen to be actively policing and defending the trademark. The plaintiffs lack of action demonstrates that the plaintiff had nothing worth protecting. The plaintiff can not reasonably argue that he took action as soon as he was aware of Syntego using the word "coins" as Syntego were using the word for two years before he obtained the trademark.

5) Syntego did not receive papers for the injunction hearing and only received the papers for the preliminary hearing to extend the injunction the day before. With out wishing to question the character of the plaintiff's attorney it cannot be denied that failure to serve papers in good time is unquestionably advantageous to the plaintiff.

6) Descriptive Fair Use, the word "coins" is not used on Syntego packaging and only appears in the key words that were scraped by amazon when importing the listings from Amazon.co.uk to Amazon.com. It cannot be reasonably argued that Syntego deliberately tried to confuse or deceive the customer into buying our products instead of the plaintiffs because we sold our products in Syntego branded packaging that clearly stated "Syntego 105 Hook & 105 Loop Dots" with a photograph of our branded packaging as the main listing image.

7) The plaintiff has explicitly stated that we are "counterfeiters" this is an outrageous claim that was made with complete disregard to any legal definition. Syntego manufactures its own products to its own specifications and packages them to sell under the registered and trademarked brand name Syntego, plaintiff has not attempted to explain how Syntego has counterfeited the word "coins"

Case: 1:23-cv-16216  Filed: 22/01/24 Page 3 of 11

8)Syntego has over 1000 different products listed on Amazon.com the Hook and Loop Dots represent less than 0.003% of Syntego sales revenue, yet the TRO has locked 100% of Syntego funds.

The Defendant is a UK company, not a Chinese company, and does not intentionally conceal their identity as Plaintiff asserts in its Complaint. (21). Rather, the Defendant has been a store front on Amazon since 2011, with an impeccable rating of 4.7. This Defendant is reputable, sells genuine goods on their store front and is rated as a Top Seller on Amazon.com and Amazon.co.uk. Syntego sought a resolution and is making an appearance before this Court, not running from these proceedings. This Defendant is law abiding and respectful of US trademarks, despite the opposite claims made by Plaintiff with no basis in fact, which was done to convince the Court that the moving Defendant is worthy of being enjoined without the opportunity to be heard or to present their defences.  The Defendant has been subjected to the most draconian remedy they could suffer, in a civil case, as an injunction has been entered against them, and they were accused of a racial malfeasance by allegedly being a Chinese seller.

 The defendant also has a website that clearly displays our contact details including business address, email address, telephone number, VAT number and company number as registered with Companies House in the UK. The defendant is also active on Social Media and has built a strong reputation as a good company to do business with and a company that provides excellent customer service.

Syntego has been trading since 2002 and has spent the past 22 years building our business and are clearly not a business that was set up five minutes ago and will simply shut down its Amazon account and start the next day as a new company as claimed by the plaintiff. Incidentally Amazon takes several years to build up to the level that Syntego has built, the plaintiff would be fully aware of this if the plaintiff was in fact an established amazon retailer as he has alleged to be.

Syntego are the polar opposite of the plaintiff who has no presence online and cannot be found on Amazon or any other sales channel. Syntego at this moment has no evidence to believe the named "Chinese national" exists.

The list of accusations made by the plaintiff's attorney are in the case of Syntego all completely and utterly untrue.

There are 58 separate points made by the plaintiff attorney, many of them are making ludicrous claims such as stating in point 13 that the plaintiff is selling "genuine products that have become very popular, driven by plaintiffs elevated quality standards and innovative designs" this is just one example of the confusion of the attorney or delusion of the plaintiff.

The plaintiff has not invented hook and loop, it was invented by Velcro and the plaintiff has not developed a single product, the attorney is trying to hood wink the court with his outrageous and unfounded claims.

Case: 1:23-cv-16216  Filed: 22/01/24 Page 4 of 11

The only thing the plaintiff owns is the trademark for the extremely generic word "coins" and nothing else.

Syntego have already given strong argument as to why the plaintiff does not have a claim against Syntego and the rest of the plaintiffs' complaints are irrelevant and are nothing more that the plaintiffs aspirations, "Well known, Customer goodwill, innovative, widespread acceptance and recognition among the consuming public" Not one of these statements can be proved by the elusive plaintiff.

The plaintiff in my opinion should be advised that he has wilfully perjured himself by submitting the document. I am also shocked that the plaintiff's attorney has filed such a document without doing his due diligence, if he had he would have quickly discovered that his client is a fantasist.

The mere fact that Defendant sells non-counterfeiting, non-infringing goods should be more than enough for the Court to re-consider both the intention of the Defendant, and the factors associated with Plaintiff prevailing on the merits. This Court has great discretion in weighing the factors for an injunction. The only thing this Defendant is guilty of is selling genuine authentic goods. As a threshold matter, the Injunction must be dissolved because Plaintiff obtained it without notice and opportunity for a hearing for the Defendants.

It is well-settled that "a court may not issue a temporary injunction without advance notice to the adverse party. "Wheeler v.Talbot, 770 F.3d 550, 552 (7th Cir. 2014) (citing Fed. R. Civ. P. 65(a)(1));see also Medeco Sec.Locks, Inc. v. Swiderek, 680 F.2d 37, 38 (7th Cir. 1981) ("Rule 65provides that no temporary injunction shall be issued without notice to the adverse party. Notice implies the opportunity to be heard. Hearing requires trial on the issue or issues of fact. Trial on the issue of fact necessitates opportunity to present evidence and not by only one side of the controversy.") While this reason alone is sufficient to warrant dissolution of the injunction, Plaintiff also fail on the merits.

In today's world of e-commerce sales, there is truly only one place that a small business must have a sales presence, and it is on the Amazon platform. Amazon has a monopolistic position in this marketplace. If you do not, or cannot, sell on Amazon as a small business, then you are a micro business, a hobbyist. Amazon sellers are subject to Amazon's rules, and Amazon, as a marketplace currently do not have a developed Intellectual Property forum to hear and decide disputes.
Now, intellectual property or trademark owners only need to assert a complaint and then Amazon's policy requires that once noticed, the seller must work out the complaint with the Complainant, and if it is not able to do so, the product or seller gets de-listed. This policy favours intellectual owners, and Amazon is rife with scofflaws, counterfeiters, and infringers. Also, the Amazon's complaint system serves as an unfair competitive advantage for predatory sellers who make invalid claims of infringement, and the complaint itself, even if invalid, serves to stifle competition and to eliminate competitors, as Amazon does not validate the merit of the infringement claim.

Case: 1:23-cv-16216  Filed: 22/01/24 Page 5 of 11

This case is one where an honest, hardworking, highly rated, and consumer valued company, in existence since 2002 has a TRO entered against them, and not because their products infringe that of Plaintiff's trademark and/or patent, but merely because Plaintiff has filed a complaint that it will not rescind, and it was able to obtain injunctive relief where the Defendant was not able to represent themselves to be heard.

Many IP claims filed with Amazon are legitimate, but the illegitimate claims require Court intervention. The alternative is to lose the business, sometimes for good, and force so many family run businesses with limited resources to unfairly suffer the wrath of anti-competitive behaviour with no adequate remedy at law. Without casting aspersions on Plaintiff's motives, its claim is per se anti-competitive, because the products sold by Syntego do not infringe Plaintiff's product. Thus, Plaintiff has petitioned the Court to preliminarily enjoin Defendant in an attempt to prevent Defendant from selling their non-infringing products[1] and to freeze their assets pending the ultimate resolution of this proceeding.

Syntego's allegedly inferior products place the plaintiff's brand goodwill and reputation at immediate risk. Critically missing from Plaintiff's motion is any showing of *evidence* of such imminent harm caused by the branded Syntego products. There is no evidence that Syntego has misbranded their products with plaintiff's trademark, in fact, the opposite is true.

Syntego sells Syntego own branded products. Nor is there any allegation that Defendant has labelled their products with Plaintiff's trademark. Defendant is just selling genuine authentic goods.

The relief granted in the injunction is too broad. Plaintiff knew or should have known in light of its apparently exhaustive investigation, that Defendant's Amazon storefront sold valid, non-counterfeit, non-infringing products. Yet, Plaintiff still sought and obtained a blanket injunction over all Defendant's assets from sales of goods that were not subject to infringement claims, as Defendant's sales of allegedly infringing products is an average of less than .003 percent of its total sales.

Here, without explanation, Plaintiff sought out "Chinese" companies for injunction but not certain U.K. entities doing the same thing they enjoined. This further belies their claim of irreparable harm. Of course, had they also sued additional U.K. sellers—or revealed to the Court alleged infringing products were sold by U.K. entities in good corporate standing—Plaintiff would have been unable to pepper their papers with numerous pejoratives about "Chinese" companies. Defendant has already suffered substantial hardship because of the Injunction.

In short, it appears that Plaintiff does not have, and never had, a basis for obtaining an injunction. Rather, Plaintiff far from fearing irreparable harm, simply wanted to deal a well timed and forceful blow to its competitors before they were given the opportunity to defend themselves. The Injunction should be immediately dissolved and a preliminary injunction should not be had against this Defendant.

---

[1] Currently Defendant's storefront remains open, but for how long remains to be seen.

Case: 1:23-cv-16216  Filed: 22/01/24 Page 6 of 11

## LEGAL STANDARD.

"A temporary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." Goodman v. Illinois Dep't of Fin. & Prof'l Regulation, 430 F.3d 432, 437 (7th Cir. 2005) (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis original)). Because an injunction is an extraordinary remedy, the court's power to issue such relief should be exercised sparingly. Rizzo v. Goode, 423 U.S. 362, 378 (1976).

A plaintiff seeking preliminary injunctive relief must establish that: "(1) its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted." Long v. Bd. of Educ., Dist. 128, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001). "[B]urdens at the temporary injunction stage track the burdens at trial." Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S 418429 (2006). Thus, the movant "bears the burden of persuasion with regard to each factor in the preliminary injunctive relief analysis," and if it "fails to meet *just one* of the prerequisites for a temporary injunction, the injunction *must* be denied." Smith v. Foster, 2016 WL 2593957, at *3 (E.D. Wis. May 5, 2016) (quoting Cox v. City of Chicago, 868 F.2d 217, 219-23 (7th Cir.1989)) (emphasis added). In order to meet its burden, PLAINTIFF must support their motion "with evidence" to satisfy "each of the[] elements" required to obtain injunctive relief. Merritte v. Kessell, 2015 WL 1775777, at *2 (S.D. Ill. Apr. 16, 2015); *see also, e.g.,* Air Serv Corp. v. Serv. Emps. Int'l Union, Local 1, 2016 WL 7034136, at *1 (N.D.

Ill. Dec. 2, 2016) (noting that the moving party "*must show* that it will suffer irreparable harm.") (emphasis added). If the movant meets these requirements, the Court must then weigh, using a sliding scale, the harm the movant will suffer without an injunction against the harm the non-movant will suffer if an injunction is issued. The **more likely the movant is to win, the less heavily need the balance of harm weigh in its favor**; conversely, the less likely the movant is to win, the more the balance must weigh in its favor. Judge v. Quinn, 612 F.3d 537, 546 (7th Cir. 2010). Such injunctive relief is "never awarded as of right," and the Court "must balance the competing claims of injury and must consider the effect on each party." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).

## ARGUMENT.

**Plaintiff obtained the Temporary injunction without Notice to Defendant.**

Prior to granting a temporary injunction, notice to the adverse party is required. Fed. R. Civ. P. 65(a)(1). It is axiomatic both in the Seventh Circuit and throughout the country, that Rule 65(a)(1) of the Federal Rules of Civil Procedure requires "adverse parties receive notice before temporary injunctions are *issued*." Wheeler, 770 F.3d 550, at 552 (emphasis original); *see also*

Consolidation Coal Co. v. Disabled Miners of S. West Virginia, 442 F.2d 1261, 1269 (4th Cir. 1971) ("PLAINTIFF obtained an *ex parte* temporary injunction in a case in which there were sharply disputed questions of fact and of law. This was manifestly error, because Rule 65(a)(1) is explicit that no temporary injunction shall be issued without notice to the adverse party.") (internal citations omitted).

Case: 1:23-cv-16216  Filed: 22/01/24 Page 7 of 11

Here, no defendant was served with advance notice of the Injunction or afforded an opportunity for a hearing in this matter. Plaintiff did not satisfy the notice requirement of Rule 65(a)(1). For this reason alone, the Injunction must be dissolved.

**Plaintiff Cannot Show Irreparable Harm.**
On the merits, Plaintiff failed to show the immediate irreparable harm required to justify the "extraordinary and drastic," remedy of a temporary injunction. Goodman, 430 F.3d at 437; *see also* Abbott Labs. v. Sandoz, Inc., 2006 WL 3718025, at *1 (N.D. Ill. Dec. 15, 2006); David White Instruments, LLC v. TLZ, Inc., 2002 WL 31741235, at *2 (N.D. Ill. Dec. 4, 2002).

**Plaintiff Has an Adequate Remedy at Law.**
The Court should dissolve the Injunction because Plaintiff failed to demonstrate that they do not have adequate remedy at law. Conclusory or speculative contentions are insufficient to demonstrate irreparable harm. *See, e.g.,* E. St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co., 414 F.3d 700, 704-06 (7th Cir. 2005) (stating that "speculative injuries do not justify" granting injunctive relief, and that a moving party "cannot obtain a temporary injunction by speculating about hypothetical future injuries"). Rather, Plaintiff's "evidence must demonstrate that [it] ha[s] carried [its] burden 'that irreparable injury is likely' — not just possible — 'in the absence of an injunction.'" Mich. v. U.S. Army Corps of Eng'rs, No. 10-CV- 4457, 2010 WL 5018559 at *24 (N.D. Ill. Dec. 2, 2010). Here, Plaintiff conclusively claimed a loss of sales and market share, but proffered no evidence of specific instances of lost sales that are attributable to the Moving Defendant.

But even assuming Plaintiff could prove that they were losing sales due to the Moving Defendant's conduct, the law is well-established that if "losses are purely financial, easily measured, and readily compensated[,] [t]here is . . . no showing of irreparable harm, and on this ground alone the temporary injunction should [be] denied." Praefke Auto Elec. & Battery Co., Inc. v. Tecumseh Prods. Co., Inc., 255 F.3d 460, 463 (7th Cir. 2001) (internal citations omitted) (holding that movant's alleged harm sounded in lost profits, which "ha[d] not fallen to a point that threatens [the movant's] solvency," and thus did not constitute irreparable harm). The percentage of Amazon sales revenue that Defendant derives from sales of the accused product is much less than one percent (1%).Thus, if this Court dissolves the Injunction, and it is later determined that Defendant were not permitted to sell
the alleged infringing products, Plaintiff can still be made whole by recovering any economic loss. Micro Data Base Sys., Inc. v. Nellcor Puritan Bennett, Inc., 165 F.3d 1154, 1157 (7th Cir. 1999) (no irreparable harm if "only money is at issue.")
Further, Plaintiff attacks against Chinese companies, and, in commingling a host of defendants without distinction, attempts to generalize the conduct of some defendants to all Defendants. It is axiomatic that attempts to plead "guilt by association is impermissible." In re Banco Bradesco S.A. Sec. Litig., 277 F. Supp. 3d 600, 664 (S.D.N.Y. 2017); United States v. Jones, 713 F.3d 336, 350 (7th Cir. 2013) (courts cannot "endorse the impermissible inferences of guilt by association or mere presence."); McGhee v. Joutras, 1996 WL 706919, at *5 (N.D. Ill. Dec. 5, 1996) (rejecting "impermissible guilt-by-association premise that fuels each of [a party's] arguments."). On these fact particularly, Defendant is re-selling non-

counterfeit, non-infringing, and authentic items, thus, such representations as to Defendant's conduct and motives is simply unsubstantiated and inapplicable.

In alleging damage to the goodwill and reputation of the brand Plaintiff simply *asserted*, without identifying the particular defendant that Defendants' sales are deceiving unknowing consumers and going to great lengths to conceal both their identities and full scope and interworking of their alleged illegal operation as well as diminishing their goodwill. . This is simply not true. Defendant's store front has been in existence since 2011 and has an impeccable positive rating.
While harm to goodwill can be an irreparable injury in certain circumstances, the "cases where courts have found irreparable harm from a loss of goodwill or business relationships have involved situations where the dispute between the parties leaves one party unable to provide its product to its customers." Kreg Therapeutics, Inc. v. VitalGo, Inc., 2011 WL 5325545, at *6 (N.D. Ill. Nov. 3, 2011). In this case, PLAINTIFF have not alleged—nor can they—that they will be unable to provide plaintiff's products to customers because of Defendant's conduct. Indeed, far from harming plaintiff, Defendant's legitimate competition is no basis for the "drastic" imposition of an Injunction.
Third, PLAINTIFF' assertion that "Defendants" are unlikely to be able to satisfy a judgment is pure, unsupported speculation. "In saying that the plaintiff must show that an award of damages at the end of trial will be inadequate, we do not mean wholly ineffectual; we mean seriously deficient as a remedy for the harm suffered." Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 386 (7th Cir. 1984). In the attached Declaration, Defendant states that they have sold an average of less than .003 percent of its sales relative to the genuine, non-infringing item thus the total sales of the hook and loop dots in no more than $300.

Evidence in support of a business that not only thrives in the American market, but relies on it. There is simply no evidence to support an inability to make good on a remedy at law before this court on behalf of this Defendant. To the contrary, the Defendant is running to the lawsuit, not away from it. Given that damages generally do not exceed a defendant's profits, Defendant has more than enough resources to satisfy any potential money judgment in this case as is evidenced by the amount of funds currently frozen. Plaintiff argued that because Defendants are foreign entities whose true identities remain unknown, any monetary judgement may be difficult, if not impossible, to collect. With respect to Defendant, they have not run, and they have availed themselves to the American Courts.
Plaintiff also speculated in seeking and extending the TRO that Defendants would evade the legal process and continue to sell infringing knock-offs through Amazon.com under a different
alias, as well as move any assets from their financial accounts to off-shore bank accounts. Respectfully, it takes time to build an Amazon storefront that can generate the kind of consistently good reviews and sales in the range of the Defendants' stores, and they do not intend and cannot afford to just cut loose and run. Finally, the same substantial revenues generated from in the U.S. market means that the Defendant cannot afford to flout a U.S. federal court's judgment at a cost of giving up this entire market. There is no justification for finding that PLAINTIFF would be unable to collect on a monetary judgment in this case.
In sum, PLAINTIFF' failure to show irreparable harm and inadequacy of remedy at law obviates any need for the Court to reach the remaining factors for considering injunctive

Case: 1:23-cv-16216  Filed: 22/01/24 Page 9 of 11

relief. *See* Smith, 2016 Abbott Labs., WL 2593957, at *3; 2006 WL 3718025, at *2; David White Instruments, 2002 WL 31741235, at *2.

**The Balance of Harms Tilts Sharply in Defendants' Favor.**
The balance of harms weighs stronger in favor of Moving Defendant. Plaintiff cannot dispute that Defendant sells substantial amounts of products that are not being accused in this action. The injunction that the Defendant seeks to dissolve has entirely frozen their respective Amazon account, precluding the receipt of any frozen sales revenue—including revenue that is not associated with their sales of the accused Products —and, in turn, hindering the payment of creditors with such expected, earned revenue. There is no basis for Moving Defendant's proceeds from non-accused products to be frozen. And, there is no indication that Amazon can partially unfreeze the Moving Defendant's assets—let alone do so quickly. Plaintiff has unfairly and unreasonably blind-sided the Defendant by crippling their Amazon-dependent financial operations without due process. It is anti-competitive. Thus, Plaintiff cannot "meet their burden of showing that the harm [it] will suffer if the injunction is denied is substantially greater than the harm [the Defendants] would suffer if the injunction were granted." Kastanis v. Eggstacy LLC, 752 F. Supp. 2d 842, 858-59 (N.D. Ill. 2010). Indeed, in obtaining the temporary injunction, it does not appear that the substantial harm to the Defendant was even considered.
As set forth above, it takes time to build up an Amazon storefront, and these assertions against Defendant cause a drop in Amazon search rankings. Far from selling "knock-offs" and "low quality" products, Defendant sells high quality products, non-infringing items and has been selling for many years. Defendant is not selling counterfeit products or otherwise deceiving the consuming public by reselling genuine authentic goods. The injunction is doing harm to Defendant's goodwill, not the other way around and should be immediately dissolved as to Envisioned.

**If This Court Deems It Necessary to Maintain the Temporary injunction, Plaintiff Should Be Required to Post an Additional Bond.**
A bond is a pre-condition to temporary injunction relief for the payment of "costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); *see also* Mead Johnson & Co. v. Abbott Labs., 209 F.3d 1032, 1033 (7th Cir. 2000). Because "[a] party injured by an erroneous temporary injunction is entitled to be made whole," the bond must be high enough to cover any losses the defendant incurs in the event the temporary injunction was erroneously entered. *See* Roche Diagnostics Corp. v. Med. Automation Sys., Inc., 646 F.3d 424, 428 (7th Cir. 2011) ("Judges [ ] should take care that the bond is set high enough to cover the losses that their handiwork could cause. A limit of zero—the upshot of an injunction without a bond—is bound to be low."). Accordingly, the bond amount must adequately cover the potential harm to the enjoined party. Fed. R. Civ. P. 65(c). Setting a bond amount is not an exact science, however, "courts generally err on the

high side when setting bond because setting bond too high is not a serious error and 'damages for an erroneous temporary injunction cannot exceed the amount of the bond.'" Stuller, Inc. v. Steak N Shake Enters., Inc., 2011 WL 2473330, at *13 (C.D. Ill. June 22, 2011).

In the present case, there is zero basis to maintain a freeze over proceeds from the noninfringing products. As to the products alleged to be infringing, they should also be unfrozen because Defendant can pay money damages. However, should the Court desire to maintain an injunction, then a bond is necessary to "cover the possible damages and costs" to Defendants. Fed.R.Civ.P. 65(c). The bond should be increased from the $10,000 currently held in this Court, per DE 32, to at least $100,000.00.

### The Court May Make Infringement Determinations.

The Court can simply compare the designs, and determine that there is simply no infringement as a matter of law. Such a determination renders the other factors as moot. A district court can issue 'tentative' or 'rolling' claim constructions in a temporary injunction proceeding. Oakley, Inc. v. Sunglass Hut Int'l, 316 F.3d 1331, 1345 n.3 (Fed. Cir. 2003). If the Court determines that there is simply no infringement as a matter of law, after reviewing the claims and applying them to the allegedly infringing device, then to force Defendant to suffer business losses, closing of the business, lost profits, and lost goodwill, is unjust. In a closer case, the outcome should require further analysis. In this case, noninfringement is clear on its face.

### D. The Interests of The Public Weigh in Favor of Plaintiff.

The interest in the public being able to fairly purchase competing products, through choice and novel design, should be supported. Defendant is a highly ranked seller. The consuming public scours Amazon listings looking for quality products and fair prices. When doing so, they find Defendant's products. This threatens Plaintiff. However, it is the public interest that is tantamount to Plaintiff. Fair play and competition weigh in favour of the public interest.

### IV. CONCLUSION.

As this Court has observed, "ex parte temporary restraining orders are vulnerable to abuse," and thus, "the safeguards embodied in Federal Rule of Civil Procedure 65(b) must be scrupulously honoured." PaineWebber Inc. v. Can Am Fin. Grp., Ltd., 1987 WL 16012, at *1 (N.D. Ill. Aug. 19, 1987) (citing 11 WRIGHT & MILLER, FED. PRAC. & PROC. § 2952 (1973)). Here, that was not done. Defendant respectfully requests that this Court dissolve the temporary injunction, deny a preliminary injunction and grant Defendant such other and further relief as this Court deems appropriate, including an Order to Amazon to release Defendant's funds. Lastly, Plaintiff should be required to post an increased bond.

Dated: January 22, 2024. Respectfully Submitted,

Elliott Isbitt
Syntego Ltd
Unit 2, Browning Road
Station Road Industrial Estate
Heathfield
East Sussex
TN218DB
United Kingdom